**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **DANNY WILLAMS,** | |
| **Plaintiff** | |
| VS. | **NO. 5: 01-CV-292 (DF)** |
| **JAMES E. DONALD and VICTOR WALKER,** | **PROCEEDINGS UNDER 42 U.S.C. §1983 BEFORE THE U. S. MAGISTRATE JUDGE** |
| **Defendants** | |

## RECOMMENDATION

Before the court are the motions for summary judgment and briefs in support of the motions of both plaintiff DANNY WILLIAMS (Tab #55) and the defendants (Tabs #48 and 52) in the above-styled case. Also on the docket are the following supporting documents: the responses of the plaintiff (Tab #74) and defendants (Tabs #76 and 78); an amicus brief filed by the Prison Legal News[1] (Tab #53); and plaintiff's reply to the defendants' response (Tab #80), as well as various depositions and both the plaintiff's and defendants' statements of facts.

The facts of the case are largely undisputed. At issue is whether a prison regulation that bans receipt by inmates of photocopied materials or materials printed from the Internet unless sent directly from the publisher or a representing attorney violates the inmates' rights. In considering this issue, the court must determine whether the regulation meets the four part test established by the Supreme Court in ***Turner v. Safely***, 482 U.S. 78 (1987).

---

[1] The Prison Legal News filed its amicus brief along with a motion for its admission. The Motion is hereby GRANTED.

**LEGAL STANDARD**

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c);* ***Warrior Tombigbee Transportation Co. v. M/V Nan Fung***, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See* ***Van T. Junkins & Assoc. v. U.S. Industries, Inc.***, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. ***Hairston v. The Gainesville Sun Publishing Co.***, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. ***Welch v. Celotex Corp.***, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. ***Clark v. Coats & Clark, Inc.***, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[2]

---

[2] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

**FACTS**

The Georgia Department of Corrections (GDC) maintains a policy regarding inmates' receipt of printed materials set forth in Standard Operating Procedure IIB04-0001. This regulation provides in pertinent part: "An inmate/probationer may receive books, magazine, printed material, or photocopies only from the publisher, dealer, or established attorney of record." Pl. Exh. 2 at 5. Although this policy does not specifically include any reference to Internet-generated materials, the GDC applies the policy to such materials on the basis of the inclusion of "printed materials" in the Standard Operating Procedure ("SOP"). *Id.* at 29, Deposition of Alan Adams, Director of Corrections Division of the Department of Corrections, at 16 (hereafter Adams Depo. at __).

In the instant case, this policy came in question because Juanita Wright, who is not an attorney, sent plaintiff WILLIAMS various legal materials that she had printed off the Internet and/or photocopied from legal reporters. Since Ms. Wright was not plaintiff Williams' attorney of record, these mailings were confiscated pursuant to the above-referred to SOP.

Defendant JAMES E. DONALD, Commissioner of the GDC, stated in his deposition that if Ms. Wright had transcribed, word for word, *by hand*, the contents of the material she had attempted to send to the plaintiff via photocopy, such documents would be permitted under the SOP. Deposition of James Donald at 42 (hereafter Donald Depo. at __). Director of Corrections Division Alan A. Adams opined that this result obtains because the mailroom staff is only allowed to inspect mail for contraband; since a *handwritten* letter would not contain "contraband items," the mailroom staff "would probably allow the inmate to have it." Adams Depo. at 19.[3]

Defendants DONALD and VICTOR WALKER, Warden of Hancock State Prison, state that photocopied or Internet-generated case law is not permitted in the prisons for security reasons: DONALD claims that cutting and pasting into an e-mail or Internet printout creates the risk of inmates getting their hands on dangerous information, such as how to make a pipe bomb. Donald Depo. at 44. Defendant WALKER says that materials — particularly legal materials — coming

---

[3]It is unclear how the GDC regulations would apply to *typewritten* letters sent to inmates and, therefore, what the result would have been pursuant to the policy if Ms. Wright had re-*typed* verbatim the contents of the materials and sent it to the plaintiff, rather than *handwritten* the contents as in the previous example. While the **contents** of the communication would be identical, the **format** would be different. The defendants cite a Ninth Circuit case in which a prison regulation permitted "internet information that retyped or copied into a word processor document," but the defendants provide no guidance as to the legality of such a document in their own system. Tab #78. Def. Reply Brief at 4. *See* **Clement v. California Dept. of Corrections**, 364 F.3d 1148 (9th Cir. 1994).

from an inmate's family and friends can contain contraband such as nudity, money, and drugs. Walker Depo. At 7-9.  On the other hand, Director of Corrections Division Adams claims that legal documents from parties other than representing attorneys are not allowed because the GDC "has an obligation to ensure the accuracy or validity of legal information that is received by an inmate." Adams Depo. at 18.[4]

The defendants also contend that permitting materials originating from the Internet would create an unmanageable burden for the mailroom staff because of what the officials suspect might be a flood of new mail and/or because an increased screening process would be necessary in order to keep out dangerous information.  However, the defendants have provided no evidence in support of this assertion; they simply state that the mailroom staff is already screening all it can safely screen.

## DISCUSSION

### Qualified Immunity

The defendants assert that qualified immunity shields them from liability in this case. Because both of the defendants are being sued only in their official capacities in this case — which is made perfectly clear by the fact that their names were substituted for the names of parties who had served in their official capacities before them (Tab #26) — qualified immunity is an inapplicable defense.  ***Rivas v. Freeman***, 940 F.2d 1491 (11th Circuit 1991).

### The *Turner* Test

It is well established that appropriate deference should be afforded prison officials with respect to the operation of their prison.  However, the Supreme Court has also found that "a prison inmate retains those constitutional rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Turner*, 482 U.S. at 95 (internal punctuation omitted).  In *Turner*, the Court established a four part test to determine whether a prison regulation is reasonably related to one of the three legitimate penological interests of security, order, and rehabilitation.

---

[4] It is not clear whether Director Adams or defendant Walker had any input in drafting the current SOP. Defendant Donald did not participate in the formulation of the policy in question.  Donald Depo. at 10.

The first part of the *Turner* test states that "there **must** be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (Emphasis added, internal quotations omitted). The second part asks "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* The third prong deals with what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* The final consideration is whether there are any "obvious, easy alternatives" to the regulation that would fully accommodate inmates at a *de minimis* cost to penological interests. *Id.*

The first prong of the Turner Test actually contains two parts: first, whether there is a legitimate governmental interest at stake, and second, whether there is a valid, rational connection between the prison regulation and that interest put forward to justify the regulation. Clearly, security is of paramount importance in any prison system. The question herein is whether there is rational connection between the regulation prohibiting receipt of materials from those other than "the publisher, dealer, or established attorney of record" and the interest put forward to justify the regulation.

The defendants claim that the GDC does not permit Internet-generated mail or photocopies because of the possibility that materials coming from those sources could be modified to hide the inclusion of dangerous materials such as prison schematics or how to build a bomb. Plaintiff WILLIAMS does not contend that it would be impossible to hide information within webpage printouts or photocopies. Instead, he argues that hiding information in a *handwritten* note is easier than hiding it within an Internet printout or altered photocopy. The regulation prohibiting Internet mail is therefore pointless, plaintiff argues, because if someone wanted to provide an inmate the dimensions of prison doors or directions for how to make a bomb, they could do so more easily (and with less effort) through a handwritten letter than by cutting and pasting content into a webpage.

Plaintiff has provided a sworn statement of a computer programmer who avers that simple encryption[5] would be the most efficient way of encoding a message because an inspector's attention would not be drawn to any embedded text.  Declaration of Austin Cherry, Tab #80 Attachment #1.  This method of providing hidden messages does not require any technology more than a pen and paper and, in the view of the undersigned, would be a simpler and more effective means of providing sensitive information to prisoners than would copying and pasting into a modified web page.  Apparently, correspondence in which the text of photocopied/Internet generated has been copied *by hand* is permitted.  *See* Donald Depo. at 42 referred to above.

The defendants do not contest that information can be hidden in handwritten messages and do not argue that it is easier, more effective, or more likely for someone to attempt to encode an Internet-generated printout than it is for that person to hide information in a handwritten letter. The plaintiff has offered evidence that the opposite is true, and that argument is persuasive. This inconsistency in the treatment of handwritten correspondence and photocopies leads the undersigned to find that there is no rational connection between the current policy (regulation) and the interest(s) advanced by the defendants to justify it. Therefore, the undersigned rejects the defendants' assertion that the GDC policy is related to a security interest.[6]  "[F]ailure on this prong ensures a finding of unconstitutionality."  ***Prison Legal News v. Cook***, 238 F.3d 1145 (9th Cir. 2001).

---

[5] Simple encryption entails the use of a simple key, such as using the third letter of each word to create an entirely different meaning than what appears to be written.  Declaration of Austin Cherry at ¶11.

[6] As noted above, Director ADAMS stated in his deposition that one of the reasons inmates are not permitted to receive printouts of legal cases from sources other than their attorney is that GDC officials believe it their responsibility to ensure the accuracy of such information.  Ensuring the accuracy of legal information is not related to any of the legitimate penological interests of security, order, or rehabilitation and therefore should be rejected pursuant to *Turner*.

Although a finding of unconstitutionality upon consideration of the first prong of *Turner* appears to be sufficient to preclude further analysis of the Turner requirements, ***Prison Legal News v. Cook***, *supra*, the undersigned notes that the impact on prison resources would not be great enough to impact a legitimate penological interest.  The defendants' argument is essentially that prohibiting Internet-generated mail and photocopied mail from entering their prison is a logical, evenhanded policy that ensures their mailroom staff can screen, sort, and deliver mail to the inmates in a timely manner.  The Ninth Circuit has found that a similar regulation was prohibited by *Turner* because it was "an arbitrary way to achieve a reduction in mail volume."  ***Clement v. California Dept. of Corrections***, *supra*, *citing* ***Morrison v. Hall***, 261 F.3d 896, 904 (9th Cir. 2001).

The defendants attempt to distinguish their regulation from the policy that was found unconstitutional in *Clement*, arguing that the policy in *Clement* provided for a *blanket* ban on receiving mail from the Internet while their policy permits such mailings if they come from the publisher of the site or the inmate's attorney.  The defendants do not, however, address the Ninth Circuit's holding that a ban on Internet mail is an arbitrary means of reducing mail volume.  While the Ninth Circuit's holding is not binding on this court, the undersigned agrees with the Ninth Circuit's interpretation.

## CONCLUSION

The defendants' argument that the prohibition found in SOP IIB04-0001 regarding Internet-generated or photocopied mail is rationally related to a security interest is not convincing, particularly in light of the defendants' distinction between such mail and handwritten mail.  Since the regulation does not pass the first prong of test set forth in *Turner v. Safley*, *supra,* the policy is unconstitutional.  As previously noted,  since the defendants are being sued only in their official capacities rather than in their individual capacities, they are not entitled to qualified immunity.

Accordingly, IT IS RECOMMENDED the defendants' **MOTION FOR SUMMARY JUDGMENT** (Tab #48) be DENIED, and that the plaintiff's **MOTION FOR SUMMARY JUDGMENT** (Tab #55) be GRANTED. IT IS RECOMMENDED that the defendants be directed to cease employing Standard Operating Procedure IIB04-0001 in regard to photocopied materials or materials printed from the Internet.  Pursuant to 28 U.S.C. §636(b)(1) the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom the case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO RECOMMENDED this 15th day of SEPTEMBER, 2006.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE