# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| DANNY WILLIAMS, | : | |
| Plaintiff, | : | |
| v. | : | 5:01-cv-292 (HL) |
| JAMES E. DONALD, Commissioner, Georgia Department of Corrections, & Warden VICTOR WALKER, | : | |
| Defendants. | : | |

## **O R D E R**

This motion comes before the Court on a Recommendation by United States Magistrate Judge Claude W. Hicks Jr.(doc.81). The Court has reviewed and carefully considered both Defendant's Objections to the Magistrate Judge's Recommendation (doc. 83-1), and Plaintiff's subsequent response (doc. 84), and concludes that the objection warrants modification of the Magistrate Judge's findings.

## I. BACKGROUND

The following facts are essentially undisputed. At the heart of the case is a controversial policy that restricts the type of mail a prisoner may receive. That policy is set forth in a provision of the Standard Operating Procedures ("SOP") adopted by the Georgia Department of Corrections ("DOC"). It reads: "An inmate/probationer may receive books, magazines, printed material, or photocopies only from the publisher, dealer, or established attorney of record." Standard Operating Procedure IIB04-0001 VI(C)(4). The policy was challenged when an inmate was prohibited from receiving mail containing materials generated from the Internet.

Plaintiff Danny Williams is currently incarcerated at Ware State Prison. However, the

allegations that form the basis of Plaintiff's claim took place while he was housed at Hancock State Prison. On multiple occasions while an inmate at Hancock State Prison, Plaintiff had materials confiscated that violated the provision at issue. Specifically, Plaintiff received several mailings from Ms. Juanita Wright Williams containing materials, namely judicial opinions, that had been printed from an electronic database off of the Internet. Prison officials confiscated the Internet-generated materials and returned them to Ms. Williams on a day she visited Plaintiff. Ms. Williams is not a publisher, dealer, nor Plaintiff's attorney of record.

This case commenced in July of 2001 when Plaintiff, proceeding in forma pauperis, filed a complaint alleging a number of claims relating to his incarceration. This Court dismissed the complaint as frivolous, and Plaintiff appealed. The United States Court of Appeals for the Eleventh Circuit affirmed in part and reversed in part this Court's decision. They remanded the case, allowing Plaintiff to proceed on three of his claims. Plaintiff voluntarily dismissed two of the claims, leaving for the Court's consideration only Plaintiff's claim alleging unconstitutional mail restriction practices. Both parties filed cross motions for summary judgment on the lone remaining claim. Plaintiff's motion was granted while Defendants' motion was denied in a Report and Recommendation issued by Magistrate Judge Claude Hicks. After the Report and Recommendation was issued, Defendants timely filed objections to Judge Hicks's order, to which Plaintiff timely responded.

## II. SUMMARY JUDGMENT STANDARD

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only

when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995). The Court may not, however, make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the non-moving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the non-moving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   DISCUSSION

While both parties filed motions, it is the outcome of one judicially created test that will determine whether either party is entitled to summary judgment. There is no dispute as to what authority should govern the constitutionality of Defendants' refusal to deliver Plaintiff's Internet-

3

generated mail, and the Magistrate Judge recognized this. The undersigned agrees entirely with the Magistrate Judge on the use of the test, but not on the outcome he reached.[1] Therefore, the undersigned will address the objections to the Report and Recommendation by revisiting the authority agreed upon by all parties as controlling.

Before reaching the analysis of the test and its application to this case, it is worth noting that Defendants at one point asserted an alternate argument in support of their motion. In addition to challenging Plaintiff's claim on the merits, Defendants also asserted the affirmative defense of qualified immunity. However, it appears as though they have abandoned the argument as no mention of it is made in their objections. Nevertheless, this Court adopts the magistrate's ruling on the issue of qualified immunity; there is no question Defendants were sued in their official capacities, and as a result, qualified immunity is not available as a viable defense to Plaintiff's claim. See Rivas v. Freeman, 940 F.2d 1491, 1494 (11th Cir. 1991).

Setting qualified immunity aside, the dispositive issue in the case becomes whether the Georgia Department of Corrections policy regarding Internet-generated mail passes constitutional muster. The right to receive literature is protected by the First Amendment, Martin v. City of Struthers, 319 U.S. 141, 143 (1943), and this protection encompasses materials disseminated

---

[1] The Magistrate Judge in his Report and Recommendation determined that the first prong was not met because of the "inconsistency in the treatment of handwritten correspondence and photocopies." (Rep. & Recomm., doc. 81, at 6.) Essentially, the Report and Recommendation's conclusion is based on the decision that because a person could encode a message into a handwritten note as easily as one could hide the same message on a photocopied (or printed or Internet-generated) page, no rational connection as contemplated by Turner v. Safley exists. The undersigned disagrees. If anything, the Magistrate's concerns are better addressed by the other prongs of the Turner test. But the first prong is only concerned with demonstrating the existence of a connection between preserving security in the prison and prohibiting the receipt of Internet-generated materials from certain sources. As discussed in more detail below, Defendants have demonstrated such an existence.

over–and presumably generated from–the Internet.  Reno v. ACLU, 521 U.S. 844, 868 (1997). Notwithstanding Plaintiff's status as a prisoner, it is well settled that inmates do not totally forfeit their constitutional rights.  "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S.78, 84(1987).  "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974) ("[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.").

Turner is the seminal case on determining the constitutionality of a prison regulation restricting the First Amendment rights of inmates.  In its opinion, the Supreme Court created a four-factor test for courts to employ when faced with such a constitutional challenge to a controversial regulation.  First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.  Turner, 482 U.S. at 89.  The second factor is whether there are alternative means that remain open to prison inmates for exercising the constitutional right. Id. at 90.  The third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.  Id.  Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.  Id. ("By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."). How the SOP fares on the Turner test will determine the disposition of the parties motions for

summary judgment.

### A. First Turner factor

The first prong of Turner asks whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it. Turner, 482 U.S. at 89. This first step actually contains two parts, requiring both a valid, rational connection and a legitimate governmental interest. Further, the first Turner factor is the sine qua non of the four-part analysis. Morrison v. Hall, 261 F.3d 896, 901 (9th Cir. 2001); Prison Legal News v. Cook, 238 F.3d 1145 (9th Cir. 2001) ("[F]ailure on this prong ensures a finding of unconstitutionality."). Accordingly, should Defendants be unable to establish the first prong of the test, the Court need not address the remainder of the Turner factors.

Defendants argue that the security of the prison is a penological interest, a contention uncontroverted by Plaintiff. There is no question that security qualifies as a legitimate governmental interest as contemplated by the Turner analysis. "[Prison officials] must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation." Hardwick v. Ault, 447 F. Supp. 116, 128 (M.D. Ga. 1978). With respect to a valid, rational connection, Defendants contend that there are two premises that support such a connection: susceptibility to misuse and volume control. These two premises, Defendants argue, can directly and indirectly endanger the prison population as well as the guards.

In terms of susceptibility of abuse, Defendants argue that Internet-generated materials, particularly large amounts as was the case here, present more opportunities to transmit contraband and prohibited communications via the prison mail–incidents which, if they occur, threaten the

6

security of the prison. Defendants point to two aspects of the Internet that make materials printed from it uncharacteristically susceptible to abuse. First, Defendants cite the ease with which one can print and send mailings consisting of a multitude of pages. Defendants assert that a common tactic of hiding prohibited items such as narcotics or weapons is to conceal them in a large sheaf of papers. Second, Defendants cite the ease with which someone surfing the Internet can locate and print out all manner of information and send it to an inmate. Defendants note that content they deem contraband[2] is readily available on the Internet, and making it easier for an inmate to receive that sort of information is contrary to legitimate penological objectives.

Plaintiff contends that preventing inmates from receiving Internet-generated mail does not make it any more difficult for a sender looking to smuggle to a prisoner prohibited information or items. Plaintiff argues that any information capable of being smuggled into an Internet-generated mailing can just as easily be coded onto a handwritten letter–an approved format for prisoner mail. The upshot of Plaintiff's argument is that since any information available on the Internet can just as easily be sent to an inmate through the prison mail in a format not prohibited by the SOP, the controversial provision is arbitrary applied to Internet-generated materials sent through the mail.

In terms of volume control, Defendants argue that the current mail staff is already overburdened, and allowing yet another acceptable form of mail that must be screened and processed would increase the chances that contraband evades the screening process. Plaintiff challenges Defendants' assertion as being unsubstantiated by sufficient evidence.

Both parties rely heavily on the Ninth Circuit case of Clement v. California Department of

---

[2] Defendants cite materials such as directions for the production of alcohol, drugs, or weapons, as well as pornography, maps, and escape plans. (Defs'. Mot. For Summ. Jmt., doc 52, at 15.)

Corrections. The arguments made in the case, at both the appellate and trial levels, are virtually duplicated here. In Clement, the Ninth Circuit affirmed a lower court ruling rejecting a blanket ban on Internet-generated mail as unconstitutional for failure to satisfy the first prong of the Turner test. The Ninth Circuit determined that "[p]rohibiting all internet-generated mail is an arbitrary way to achieve a reduction in mail volume." Clement v. Cal. Dep't of Corr., 364 F.3d 1148, 1152 (9th Cir. 2004). It should be noted, however, that Defendants' prison regulation prohibits prisoners from receiving internet-generated mail not sent from a publisher, dealer, or their attorney of record. The case at bar is therefore distinguishable from Clement, in which the Ninth Circuit ruled that a blanket ban on Internet-generated materials in prisoner mail (prisoners could not receive internet-generated materials, regardless of their origin) was unconstitutional.

Here, the Court finds that Defendants have demonstrated that a prohibition on receipt of Internet-generated mail is connected both validly and logically to the advancement of the overall safety and security of the prison. By limiting the sending of Internet-generated materials through the mail to publishers, dealers, and attorneys, the prison can curb the potential influx of contraband that is so easily accessible over the world wide web. Further, the prison mail room can avert the potential surge in mail volume caused by granting inmates pages upon pages printed off of the Internet at the touch of a button. Preventing the inundation of webpages sent through the mail allows the prison mail staff to process and screen a more manageable amount thereby decreasing the chances of contraband reaching the prison population. That the origin-based restriction[3] at issue here is rationally related to a legitimate governmental objective warrants survival of the threshold

---

[3] An origin-based restriction refers to limitations placed on who can send certain materials to inmates. It is distinct from a source-based restriction that limits the type of materials that an inmate can receive.

8

prong of the Turner test and analysis of the remaining three factors.

### B. Second Turner factor

The next part of the test requires the Court to address whether there are alternative avenues that remain open to inmates to exercise their right to the receipt of Internet-generated mail. Turner, 482 U.S. at 90. "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." Id. (internal cites and quotation marks omitted).

Here, Defendants argue that since the prohibition on Internet-generated materials is an origin-based restriction, rather than a blanket ban, other avenues remain open for prisoners to receive the materials at issue. Plaintiff responds that many publications today are found exclusively on the internet, and it is unrealistic to have someone transcribe the entirety of the publication onto a handwritten letter or have the website manager send a publication directly to the inmate.

The Court agrees with Defendants that practicable alternatives exist for prisoners to have access to Internet-generated materials. Plaintiff challenges that "where there is no other way for the inmate to obtain the information, the mail restriction regulation is more likely to be unconstitutional." (Pl's. Mot. for Summ. Jmt., doc. 55, at 14.) However, by the language of the definition, Defendants' SOP allows an inmate to receive printed materials from a publisher, dealer, or an attorney of record. The restriction serves its purpose to promote security by not inviting additional vehicles for contraband smuggling, while at the same time allowing inmates access to innocuous materials found on the Internet. Plaintiff and other inmates housed in Defendants' prisons are not totally foreclosed from exercising their right to have access to materials generated from the

Internet.[4] The undersigned concludes that an alternate avenue to the origin-based restriction does in fact exist, and its existence supports the validity of the controversial SOP provision.

**C. Third Turner factor**

The third part of the test addresses what impact allowing inmates to receive internet generated mail will have on the prison, viz., its population, its staff, and its resources. Turner, 482 U.S. at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." Id.

Defendants contend that lightening the prison mail restriction can only result in an increase in mail volume, which as discussed in the analysis of the first prong, can threaten the security of the prison. Plaintiff counters that Defendants have provided no evidence as to what sort of increase in volume will result if the SOP is not applied to Internet-generated materials. Further, Plaintiff argues there are ways to curb the volume while allowing inmates to receive the materials at issue–an argument better suited for the fourth Turner prong.

Considering the foregoing arguments, the Court finds that simply preventing Defendants from applying the controversial SOP to Internet-generated materials will have an adverse effect on the resources allocated to screen and process prisoner mail. Loosening the restriction certainly

---

[4] To be sure, the undersigned acknowledges the incongruity that arises when the controversial provision is applied to court opinions, as is the case here. Typically, the inmates who need to be able to receive through the mail court opinions to research their appeals or other relief they may seek via the judicial system are typically not represented by counsel (or else counsel would be doing the research and writing for them). However, the inmates do have access to law library. If Plaintiff is unsatisfied with the law library resources, the proper way to address his dissatisfaction is through a denial of access claim. Incidentally, this Court has already considered a denial of access claim filed by Plaintiff, and it was dismissed. The dismissal of the claim was later affirmed by the Eleventh Circuit.

won't lessen the amount of mail received, and with the ability to print sizeable amounts of information at the touch of a button, the different options available to prisoners through the mail increases dramatically. This increase is precisely the sort of ripple effect contemplated by the Supreme Court when they articulated instances where courts should defer to prison officials.

Accordingly, this Court agrees with Defendants that more resources would have to be allocated to screening prisoner mail if the origin-based restriction on printed materials is not applied to Internet-generated mail. As a result, the undersigned concludes that accommodating Plaintiff's request to allow Internet-generated materials to operate outside of the origin-based restriction at issue will negatively impact prison resources by compromising the mail screening process in place in such a way that the security of the prison could be in jeopardy.

### D. Fourth Turner factor

Finally, the Court must determine whether the source rule prohibiting printed materials from being received by anyone other than a publisher, dealer, or attorney of record is an exaggerated response by DOC officials, or if easy and obvious alternatives exist. Turner, 482 U.S. at 90. While Defendants need not consider every alternative imaginable, the reasonableness of the provision at issue can be called into question if Plaintiff can suggest an alternative that "fully accommodates [his] rights at de minimis cost to valid penological interests." Id. at 91.

Defendants contend that while alternatives to the origin-based restriction may exist, implementing them would come at a significant cost. Defendants point to the staff whose task it is to screen and process all inmate mail, and aver that requiring said staffers to review additional pieces of mail that were once prohibited would put an unnecessary strain on resources as well as jeopardize the safety of prison population assuming contraband is more likely to reach inmates when mail staff

has more to screen. Conversely, Plaintiff argues that the measures already in place to screen and process prisoner mail can simply be applied to mail containing Internet-generated materials, thereby obviating the need for application of the origin-based rule. Plaintiff points to both existing and non-existing provisions of Defendants' SOP that could be used to maintain security–furthering a legitimate penological interest–and at the same time allow inmates access to Internet-generated materials through the mail. Specifically, Plaintiff suggests that applying the screening process already in place for non-privileged mail (e.g., personal, handwritten mail) coupled with a new restriction putting a limit on the amount of mail a prisoner can receive each week should alleviate Defendants' concerns regarding a safety threat.

Considering the foregoing arguments, the Court is inclined to side with Defendants. While Plaintiff provides for a feasible solution to Plaintiff's inability to receive Internet-generated mail under the current system, he makes no mention of the cost to penological resources, something this Court perceives as crucial in order to find that the fourth prong of the Turner test cuts toward a finding of unconstitutionality. The language of the final prong calls for an obvious and easy alternative, and promulgating additional provisions to the SOP that will ultimately require the prison mail staff to work longer or be in need of additional help is not easy enough. The undersigned concludes that there is no obvious and easy alternative to applying the origin-based restriction to Internet-generated materials that can be implemented without putting an appreciable strain on Defendants' ability to preserve the security of the prison.

### III.   CONCLUSION

The relative ease with which one can locate and print information off the Internet is troubling when considering the potential threats to the prison population. However, there are legitimate,

valuable resources on the world wide web that inmates should have access to. They way to reconcile this dilemma is to have in place a content-neutral, origin-based restriction on Internet-generated materials. Therefore, Standard Operating Procedure IIB04-0001 VI(C)(4) providing that: "An inmate/probationer may receive books, magazines, printed material, or photocopies only from the publisher, dealer, or established attorney of record[]" is not unconstitutional as applied to Internet-generated materials as contemplated by the four-part test articulated in Turner.

Based on the foregoing reasons, Plaintiff's Motion for Summary Judgment (doc. 55) is DENIED, and Defendants' Motion for Summary Judgment (doc. 48) is GRANTED.

SO ORDERED, this 4th day of December, 2007.

/s/ *Hugh Lawson*
HUGH LAWSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

HL/cbb